*Stevenson & O'Hara, for appellant.    W. W. Ireland, for appellee.*

---

HENRY MCGEE *v.* COMMONWEALTH.

**Criminal Law—Homicide—Dying Declarations.**

Where a dying declaration reduced to writing is held inadmissible as evidence, it does not follow that a parol dying declaration is not admissible. When a written declaration is excluded on motion of the accused in a murder trial the ruling will not prevent parol dying declarations otherwise admissible from being admitted as evidence against the accused.

**Foundation of Dying Declaration.**

When the attending physician of one who has been shot after examination states to his patient that his recovery is impossible and the physician then believes that the patient has himself no hope of recovering at the time he made a declaration as to who shot him, such dying declaration is admissible in evidence.

**Voluntary Manslaughter—Instruction.**

Where no one saw the wounding that resulted in the death of decedent the accused is entitled to an instruction to the effect that, although the jury may find that the accused killed the deceased not in his necessary self-defense, yet if he did so in sudden heat and passion and without malice, either expressed or implied, they should find him guilty of voluntary manslaughter.

APPEAL FROM ANDERSON CIRCUIT COURT.

October 22, 1878.

OPINION BY JUDGE ELLIOTT:

On the 14th of March, 1877, James Smith, a man of color, was shot and killed near Harrodsburg, Mercer county, Kentucky. He

was shot after dark while on the bridge across Scott's Creek on the Cornishville Turnpike Road, and the evidence all concurs that the night was very dark.

The appellant was tried and convicted of the murder of Smith and sentenced to be hung, which judgment this court reversed, and having been again convicted of the murder and sentenced to confinement in the penitentiary for life he has again appealed to this court.

The errors complained of are the admission of illegal evidence and improper instructions to the jury.

On the first trial of the appellant the appellee read in evidence the written dying declarations of the deceased over appellant's objections, and on the former appeal of this case this court ruled that those written declarations should not have been admitted.

On the return of the case and on this trial the appellee again offered the evidence of those same written declarations, but they were ruled out on appellant's motion, and then the appellee offered in evidence the parol dying declarations of the deceased which were admitted over appellant's objection, and it is now insisted that the deceased having reduced his dying declarations to writing the state is bound by the written evidence, and that no parol dying declaration is admissible.

We are of a different opinion. The written dying declaration that cannot be explained by parol evidence is one that is admissible in evidence against the prisoner, but when the written declaration is inadmissible, and especially when the evidence has been excluded on appellant's motion, it will not stand in the way of parol dying declarations otherwise admissible.

It is, however, contended by appellant that the parol dying declarations of the deceased, proved by Dr. Thompson, which the court permitted to go to the jury, were not admissible and should on his motion have been rejected. The evidence of Dr. D. M. Thompson conduces to prove that he arrived at the bedside of deceased about eight o'clock at night after he was shot, and that he found him very much prostrated from the effects of the wound, and his extremities cold. He says that he told deceased that he was bound to die and that he should be careful not to charge the innocent with the offense of shooting him. The doctor says that although the deceased said nothing about whether he thought he would die or not, he, the doctor was fully impressed with the belief that the deceased had no hope at that time. With this foundation for his statement the doc-

tor was permitted to give evidence of the declarations made by Smith after the doctor's statement to him that he could not recover, and after the evidence by the doctor that he made statements to the same purport after he had expressed the opinion that he was bound to die.

It is contended by the appellant's counsel that if any of Smith's declarations were admissible it was only the one made after he had expressed the belief that he would die, and that it was error to permit declarations of Smith made on the physician's first visit and also on his second visit, as he did not express the opinion that he would die till the third visit, when he told the doctor about what he had declared before as to who had wounded him.

We are of opinion that the preliminary evidence of Dr. Thompson fully authorized the admissibility, from all the declarations made by Smith to him, even if Smith had never positively expressed a belief that he would not recover.

Mr. Greenleaf, in his work on evidence, Vol. 1, page 211, speaking of dying declarations, says: "It is essential to the admissibility of these declarations, and is a preliminary fact to be proved by the party offering them in evidence, that they were made under a sense of impending death, but it is not necessary that they should be stated at the time to be so made. It is enough if it satisfactorily appears in any mode that they were made under that sanction, whether it be directly proved by the express language of the declarant or be inferred from his evident danger or the opinion of the medical or other attendants stated to him, or from his conduct or other circumstances of the case, all of which are resorted to in order to ascertain the state of the declarant's mind."

The evidence of the attending physician that he had informed Smith that recovery was impossible, and the belief of the doctor that the deceased had no hope at the time he made the dying declarations, authorized their admission in evidence in this case.

The last declaration that deceased made to his doctor was made, as is admitted, when in extremes, and in that conversation he told him that the other declarations that he had made to him as to who had wounded him were strictly true, and he then repeated substantially what he had said before, and as before stated all the declarations were admissible.

The substance of the dying declarations proved by the doctor was that "Henry McGee shot him; that he saw him and recognized him; that he was at the west end of the bridge about three feet from him

when defendant stepped out from the side of the bridge and shot him;" and the fact that the deceased made these declarations is fully corroborated by several witnesses to whom he made like declarations after he had expressed a belief that he must die.

As to the objections made to instructions we find more difficulty. The court, by its second instruction, said: "If the jury believe from the evidence beyond a reasonable doubt that defendant, Henry Mc-Gee, indicted by the name of Henry Lewis, in Mercer county, before April 30, 1877, shot and killed James Smith wilfully and with malice aforethought, when such shooting was not necessary or apparently necessary in his self-defense, they should find him guilty of murder and fix his punishment at death by hanging, or confinement in the penitentiary for life, in their discretion." By the third instruction the jury were told as follows: If, however, the jury believe from the evidence beyond a reasonable doubt that the defendant shot and killed said Smith at the time, place and in the manner above set out in instruction two, then, unless they believe from the evidence at the time of such shooting defendant believed and had reasonable ground to believe that such shooting was necessary to protect himself from immediate impending danger at the hands of deceased, they should find him guilty of voluntary manslaughter and fix his punishment at confinement in the penitentiary not less than two nor more than twenty-one years."

It will be seen that by instruction No. 2 the jury are told that if appellant, with malice aforethought and not in self-defense, shot and killed deceased, he was guilty of murder; and by the third instruction the jury are told if appellant killed deceased at the time, place and in the manner set out in instruction No. 2, then they should find him guilty of manslaughter. So the court required the same character of evidence to convict of voluntary manslaughter that it did of murder, and the jury may have come to the conclusion that even if the defendant had only been guilty of voluntary manslaughter they had a right to convict to the penitentiary for life, as it required the same character of evidence to convict the prisoner of manslaughter that it did of murder, and therefore they had a right to convict of either at their option.

The difficulty, in other words, is that the court gave no instruction defining the offense of voluntary manslaughter at all, and we are of opinion that as nobody saw the wounding that resulted in Smith's death that the prisoner was entitled to an instruction to the

effect that although the jury may find that he killed Smith, and not in his necessary self-defense, yet if he did so in sudden heat and passion and without malice, either expressed or implied, that they should find him guilty of voluntary manslaughter and fix the penalty of such offense.

And for this error the judgment is reversed and cause remanded for further proceedings consistent with this opinion.

*Bell, Willis & Thompson, for appellant. Moss, for appellee.*